**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WARREN BOARDLEY,                :
                                         Civil Action No. 05-1915 (RBK)
         Petitioner,            :

         v.                     :     **OPINION**

WARDEN JOHN NASH, et al.,       :

         Respondents.           :

**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Warren Boardley                  John Andrew Ruymann
FCI - Fort Dix                   Assistant U.S. Attorney
Unit 5741                        402 East State Street
P.O. Box 2000 East               Room 430
Fort Dix, NJ 08640               Trenton, NJ 08608

**KUGLER**, District Judge

    Petitioner Warren Boardley, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The respondents are Warden John Nash and the United States Parole Commission.

    For the reasons stated herein, the Petition must be denied.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.   BACKGROUND

Pursuant to a guilty plea, Petitioner was convicted, in the U.S. District Court for the District of Maryland, of participation in the affairs of an enterprise through a pattern of racketeering activity, RICO conspiracy, conspiracy to distribute and possess with intent to distribute heroin and cocaine, and conspiracy to defraud the United States.

Petitioner contends that these offenses were committed on May 2, 1986.  (Petition, ¶ 3.)  Respondents contend that the relevant conduct extended from early 1984 through sometime in 1988.  (Answer at 12-13; Pre-Sentence Report ("PSR")at 21-23, 27-28.)[2]  In his Objections [10] to the Answer, Petitioner does not respond to the allegations regarding the dates of the relevant conduct, nor does he indicate that he objected to the PSR when it was considered in connection with his sentencing.

On June 21, 1989, Petitioner was sentenced to a prison term of 47 years.  Petitioner became eligible for parole consideration on this sentence on November 1, 1998.

The U.S. Parole Commission conducted an initial parole hearing for Petitioner on August 5, 1998.  The hearing examiner assessed an offense severity rating of Category Eight and a

---

[2] Because it and certain exhibits refer to the confidential Pre-Sentence Report ("PSR"), the Answer [8] has been filed under seal.  This Court has determined that any information from the PSR recited in this Opinion is relevant and appropriate for inclusion.

Salient Factor Score of Nine, leading to a Guideline Range of 100-plus months.  He recommended that Petitioner be paroled after service of 180 months.  The second examiner disagreed with this recommendation, noting first that the Salient Factor Score should be seven, and noting further that Petitioner was the recognized leader of a major drug conspiracy who admitted, as part of his plea agreement, to participating in the attempted murder of five persons, and who may have been responsible for ordering the murder of three more individuals.  The second examiner recommended continuing the matter to a 15-year reconsideration hearing in August 2013.  (Gervasoni Certificate, Ex. 2.)  The Regional Commissioner adopted the second examiner's recommendations, as reflected in the Notice of Action dated August 31, 1998.  (Gervasoni Certificate, Ex. 3.)  The National Appeals Board affirmed the decision of the Regional Commissioner.  (Gervasoni Certificate, Ex. 4.)

    The Parole Commission conducted a statutory interim hearing on August 9, 2000.  Based upon Petitioner's history of participation in a large drug conspiracy and the murders and attempted murders of several individuals, the hearing examiner recommended no change in the previous decision that Petitioner serve to a 15-year reconsideration hearing.  (Gervasoni Certificate, Ex. 5.)  The Commission ordered no change in the 15-year reconsideration date.  (Gervasoni Certificate, Ex. 6.)  The

National Appeals Board affirmed this decision.  (Gervasoni Certificate, Ex. 7.)

The Parole Commission conducted a second statutory interim hearing on July 2, 2002.  Based upon Petitioner's superior program achievement, the examiner recommended advancing the 15-year reconsideration hearing from August 2013 to February 2013.  (Gervasoni Certificate, Ex. 8.)  The Commission adopted this recommendation.  (Gervasoni Certificate, Ex. 9.)  Petitioner did not appeal this decision.

Most recently, the Parole Commission conducted a statutory interim hearing on July 7, 2004.  The examiner recommended no change in the reconsideration hearing date.  (Gervasoni Certificate, Ex. 10.)  The Commission adopted this recommendation.  (Gervasoni Certificate, Ex. 11.)  The National Appeals Board affirmed this decision as follows, in pertinent part:

> Second, Section 235(b)(3) of the Sentencing Reform Act of 1984 does not require the Commission to set release dates for any prisoner until just prior to its abolition.  The Commission's abolition has been extended from five years to eighteen years following the effective date of the SRA, and is now October 31, 2005.  Your hopes for release on parole are not being frustrated by this Congressionally-mandated postponement because the Commission has already decided that a release date would not be justified for you prior to February of 2013 (which is your fifteen-year reconsideration hearing date).  Moreover, as the Commission's Notice of Action dated August 31, 1998, made clear, your offense behavior has been rated Category Eight on the guidelines at 28 C.F.R. § 2.20, which means that there is no upper limit for the

> Commission to observe in setting a release date for you, even if the procedure mandated by Section 235(b)(3) were to be implemented. Thus, the appropriate release date in your case under Section 235(b)(3) could be your mandatory release date, if the Commission were to find such a decision appropriate.
>
> ... One reason for denying an early release date notwithstanding a record of "superior program achievement" would be an offense of extreme seriousness. In your case, you were the kingpin of a major heroin trafficking organization in Baltimore, Maryland, and in that capacity you ordered the cold-blooded killings of numerous individuals whom you regarded as rivals or objects of revenge. You succeeded in having three individuals gunned down by your henchmen, and attempted five more. (See Notice of Action dated August 31, 1998.) Responsibility for multiple murders committed during the course of organized crime is an extraordinarily grave matter. It calls for appropriate punishment, and a strong measure of general deterrence.
>
> Finally, your ability to program well in a prison setting does not appear to justify your contention that you would lead a law-abiding life in the community if the Commission paroled you. Given your record of criminal sophistication and manipulation of others to avoid arrest and prosecution, your prison record cannot be given predictive significance. Although the Commission commends and encourages your positive behavior (see Notice of Action dated July 12, 2002, advancing the date of your 15-year reconsideration hearing), it is not a basis for granting you release on parole at this time.

(Gervasoni Certificate, Ex. 12.)

Thereafter, Petitioner filed this Petition in which he asserts that the Parole Commission has failed to set a release date for him within his guideline range as required by Section 235(b)(3) of the Sentencing Reform Act of October 12, 1984. Petitioner contends that the Parole Commission has applied the

amended version of Section 235(b)(3), which became effective on December 7, 1987, to set a release date outside his guideline range, in violation of the Ex Post Facto Clause of the U.S. Constitution.  Finally, Petitioner contends that the Parole Commission has failed to state its reasons for denying him parole.  Respondents have answered, admitting that Petitioner has exhausted his administrative remedies.  Petitioner has filed Objections to the Answer.  This matter is now ready for disposition.

## II.  THE SENTENCING REFORM ACT

Before November 1, 1987, The Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences.  18 U.S.C. §§ 4201-4218 (repealed 1984, effective 1987).  Pursuant to 18 U.S.C. § 4206, the Parole Commission was authorized to award federal prisoners parole under specified circumstances.

> (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;
>
> subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of

>this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.
>
>...
>
>(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: <u>Provided</u>, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
>
>...

18 U.S.C. § 4206.

Dissatisfied with this parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA, and which became effective on November 1, 1987.  Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)).  Under the SRA, parole was to be abolished for offenses committed after November 1, 1987, the Parole Commission was to be phased out after five years, and prisoners were to serve uniform sentences under sentencing guidelines.  Section 235(b)(3) of the original SRA provided that:

>The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, <u>that is within the range that applies to the prisoner under the applicable parole guideline</u>.  A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before

>   the expiration of five years following the effective
>   date of this Act.

Id. (emphasis added).  On December 7, 1987, Section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates <u>within</u> the guideline range.  <u>See</u> Sentencing Act of 1987, Pub.L. No. 100-182, § 2(b)(2), 1010 Stat. 1266 (1987).  The amended section 235(b)(3) requires the Parole Commission to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates <u>outside</u> the guideline range.

Congress repeatedly has extended the life of the Parole Commission to administer those prisoners with pre-SRA sentences.  <u>See</u>, <u>e.g.</u>, Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089, 5115 (1990)  (extension to ten years); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (1996) (extension to fifteen years); Pub.L. No. 107-273, § 11017, 116 Stat. 1758 (2002) (extension to eighteen years); Pub.L. No. 109-76, § 2, 119 Stat. 2035 (2005) (extension to twenty-one years).  The life of the Commission has been extended most recently to October 31, 2008.  <u>See</u> <u>id.</u>

Pursuant to the guidelines promulgated by the Commission, at all times relevant to this action, a federal prisoner with an Offense Severity Rating of Eight has had a guideline range of at least 100-plus months to be served before release, regardless of the prisoner's Salient Factor Score.  28 C.F.R. § 2.20 Table "Guidelines for Decision-Making."  <u>See</u> 47 Fed.Reg. 56334-36 (Dec. 16, 1982); 50 Fed.Reg. 40365-67 (Oct. 3, 1985); 52 Fed.Reg.

8

46596-97 (Dec. 9, 1987). In the regulation, the Parole Commission notes "For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category." 28 C.F.R. § 2.20 Table "Guidelines for Decision-Making" Note 1.

### III.   ANALYSIS

Article I, Section 9, of the United States Constitution provides that "No ... ex post facto Law shall be passed." Thus, the Ex Post Facto Clause prohibits Congress from enacting any laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990).

The Court of Appeals for the Third Circuit clearly has held that the 1987 amendment to § 235(b)(3), which reinstated the authority of the Parole Commission to set parole release dates outside the guideline range, violates the Ex Post Facto Clause when applied to an offender who committed his crimes between October 12, 1984, and November 1, 1987, during which time the original § 235(b)(3) required the Parole Commission to set parole release dates within the guideline range. See Lyons v. Mendez, 303 F.3d 285 (3d Cir. 2002).

Faced with an issue similar to that presented here, however, the Court of Appeals for the Third Circuit held that it was unnecessary to consider whether the amended version of Section

9

235(b)(3) was applied unconstitutionally to a Category Eight offender whose offenses had been committed in 1976. <u>Madonna v. U.S. Parole Commission</u>, 900 F.2d 24 (1990). Assuming <u>arguendo</u> that no upward departure was permitted, the Court found that no upward departure had occurred, or could occur, because there is no upper limit to the guideline range applicable to Category Eight offenders. <u>Id.</u> at 25-26.

Similarly, here, the Parole Commission has not set a parole reconsideration date outside of the guideline range, because the guideline range, at all relevant times, for Petitioner, a Category Eight offender, has been 100-plus months.

Petitioner's contention that the Parole Commission is required at this time to set a release date also is unavailing. Without regard to whether the original or amended version applies to Petitioner, Section 235(b)(3) only requires the Parole Commission to set a release date "early enough to permit consideration of an appeal" before October 31, 2008. <u>See</u> <u>Sterling v. Hood</u>, 120 Fed.Appx. 278 (10th Cir. 2005). <u>See also</u> <u>Romano v. Luther</u>, 816 F.2d 832, 839 (2d Cir. 1987) (although § 235(b)(3) became effective upon enactment, five-year (now 21-year) transition period begins Nov. 1, 1987) (cited with approval in <u>Lyons</u>, 303 F.3d at 387 n.2). The Parole Commission has estimated that appeals of final release dates will take three to six months. <u>See</u> 28 C.F.R. 2.64 (1987); 52 Fed.Reg. 5763-64 (Feb.

26, 1987). Thus, the Parole Commission has no present duty to set a release date for Petitioner. Cf. Romano, 816 F.2d at 842); Hackett v. U.S. Parole Commission, 851 F.2d 127 (6th Cir. 1987); Riley v. Hastings, 2005 WL 3277402 (E.D. Ky. Dec. 2, 2005).

Finally, Petitioner's claim that the Parole Commission failed to provide its reasons for denying parole is meritless. A federal court's role in reviewing decisions by the Parole Commission is limited.

> The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976); see also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission."). This Court should review, however, whether the Commission "has followed criteria appropriate, rational and consistent" with its enabling statutes so that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Zannino, 531 F.2d at 690. To this end, "the Commission may not base its judgment as to parole on an inaccurate factual predicate." Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (3d Cir. 1983) (citations omitted).

Furnari v. Warden, Allenwood Federal Correctional Institution, 218 F.3d 250, 254 (3d Cir. 2000).

Here, Petitioner does not dispute that his offense is correctly classified as a Category Eight offense. In any event, the Parole Commission properly relied upon the information contained in the PSR in classifying the offense. The Parole

Commission properly considered the scope of Petitioner's criminal conduct and his role in the criminal enterprise in denying parole.  In addition, the Parole Commission properly considered Petitioner's institutional adjustment and explained its reasons for finding Petitioner's institutional behavior insufficient to justify parole.  The Parole Commission clearly explained its reasons for denying parole.  There was no abuse of discretion.  Petitioner is not entitled to relief.

## IV.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: July 28, 2006